UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT
06-60296

_____

UNITED STATES OF AMERICA--------------------------PLAINTIFF-APPELLEE

VS.

TERRY JERMAINE DENSON------------------------DEFENDANT-APPELLANT


_____


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Jackson Division
3:98-cr-36WN

_____    _____


_____BRIEF OF APPELLEE

_____


**DUNN LAMPTON**
United States Attorney
Southern District of Mississippi
**GERALD M. ABDALLA, JR.**
Assistant United States Attorney
MSB # 101213
Phone # (601) 973-2883
**JACK B. LACY, JR.**
Assistant United States Attorney
MSB# 1757
188 E. Capitol Street, Suite 500
Jackson, Mississippi 39201

## **STATEMENT ON ORAL ARGUMENT**

_____The government does not request oral argument.  Resolution of the issues

raised in this appeal may be accomplished by review of the briefs and record.

# **TABLE OF CONTENTS**

Statement of Jurisdiction............................................................................1

Statement of the Issues..............................................................................2

Statement of the Case................................................................................2

Summary of the Argument.........................................................................5

Argument...................................................................................................7

I.        IT WAS NOT AN ABUSE OF DISCRETION FOR THE DISTRICT
COURT TO BASE ITS SENTENCE FOR DENSON'S
SUPERVISED RELEASE VIOLATIONS, IN PART, ON HEARSAY
EVIDENCE REGARDING THE VALUE OF THE ITEMS
STOLEN..............................................................................................7

II.    A.    DENSON'S REQUEST TO RECEIVE CREDIT ON HIS FEDERAL
SENTENCE FOR TIME SERVED IN STATE CUSTODY IS MOOT
BECAUSE THERE IS NO CASE OR CONTROVERSY FOR THIS
COURT TO ADDRESS.......................................................................11

        B.    DENSON'S REQUEST TO RECEIVE CREDIT ON HIS FEDERAL
SENTENCE FOR TIME SERVED IN STATE CUSTODY IS NOT
RIPE BECAUSE HE FAILED TO EXHAUST ALL REQUIRED
ADMINISTRATIVE REMEDIES BEFORE THIS
APPEAL...........................................................................................12

        C.    THE DISTRICT COURT WAS CORRECT TO DENY DENSON'S
REQUEST TO RECEIVE CREDIT ON HIS FEDERAL SENTENCE
FOR TIME HE SERVED IN STATE
CUSTODY.........................................................................................13

Conclusion...............................................................................................15

Certificate of Service...............................................................................16

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright*, 468 U.S. 737 (1984)....................................................................11

*Deakins v. Monaghan*, 484 U.S. 193 (1988)..........................................................11

*Morrissey v. Brewer*, 408 U.S. 471 (1972).............................................................7

*United States v. Johnson*, 529 U.S. 53 (2000).........................................................12

*Adams v. Morrison*, 84 Fed. Appx. 419 (5th Cir. 2003)..........................................12

*Boyd v. United States*, 448 F.2d 477 (5th Cir. 1971)................................................14

*Jackson v. Attorney General*, 447 F.2d 747 (5th Cir. 1971)...............................14,15

*O'Connor v. Attorney General*, 470 F.2d 732 (5th Cir. 1972)...........................13,14

*Shaw v. Smith*, 680 F.2d 1104 (5th Cir. 1982).........................................................14

*United States v. Alaniz-Alaniz*, 38 F.3d 788 (5th Cir. 1994) ..................................10

*United States v. Bell*, 678 F.2d 547 (5th Cir. 1982).................................................10

*United States v. Bleike*, 950 F.2d 214 (5th Cir. 1991).............................................12

*United States v. Brown* 753 F.2d 455 (5th Cir. 1985).........................................12,14

*United States v. Dowling*, 962 F.2d 390 (5th Cir. 1992).....................................12,13

*United States v. Grandlund*, 71 F.3d 507 (5nd Cir. 1995)........................................7

*United States v. Hinson*, 429 F.3d 114 (5th Cir. 2005)............................................10

*United States v. McCormick*, 54 F.3d 214 (5th Cir. 1995).........................................7

*United States v. Stone*, 51 F.3d 1042 (5th Cir. 1995)..........................................12,13

## STATUTES AND RULES

U.S. Const. art. III.................................................................................................11

18 U.S.C. § 3742................................................................................................2

21 U.S.C. § 841(a)(1)............................................................................................3

28 U.S.C. § 1291................................................................................................2

Fed. R. Crim. P. 32.1(b)(2).......................................................................................7

Fed. R. Evid. 1101(d)(3)..........................................................................................7

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT
06-60296

_____

UNITED STATES OF AMERICA--------------------------PLAINTIFF-APPELLEE

VS.

TERRY JERMAINE DENSON------------------------DEFENDANT- APPELLANT

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Jackson Division
3:98-cr-36WN

_____

BRIEF OF APPELLEE

_____

STATEMENT OF JURISDICTION

This is an appeal in a criminal case from the judgment of Chief United

States District Judge Henry T. Wingate, revoking the defendant's term of

supervised release, filed of record on February 28, 2006.[1] (R/41-45) A Notice of

---

[1] Abbreviations used in this Brief are as follows: "R" indicates the Record consisting of documents filed in the district court, "Rev.Tr." indicates the Revocation Hearing Transcript, "AB" indicates the Appellant's Brief, and "Ex" indicates the Government's Exhibits.

Appeal was timely filed on October 25, 2005.[2] (R/39) The jurisdiction of this

Court exists pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

_____STATEMENT OF THE ISSUES

I.      WHETHER IT WAS AN ABUSE OF DISCRETION FOR THE DISTRICT
        COURT TO BASE ITS SENTENCE FOR THE DEFENDANT'S
        SUPERVISED RELEASE VIOLATIONS, IN PART, ON HEARSAY
        EVIDENCE REGARDING THE VALUE OF THE ITEMS STOLEN.

II.     WHETHER THE DISTRICT COURT WAS CORRECT IN DENYING
        THE DEFENDANT'S REQUEST TO RECEIVE CREDIT ON HIS
        FEDERAL SENTENCE FOR TIME SERVED IN STATE CUSTODY.

STATEMENT OF THE CASE

(i) Course of Proceedings and Disposition in Court Below

The defendant, Terry Jermaine Denson, was on federal supervised release

when a Petition for revocation of his supervised release was filed due to his

numerous violations. (R/32-33)

A revocation hearing was held on August 23, 2005, at the conclusion of

which the district court found that Denson had violated the terms of his supervised

release and sentenced him to 14 months imprisonment to be followed by a 36

month term of supervised release. (R/41-45) Denson served his 14 month sentence

and was released from prison on August 10, 2006. (AB/7) This appeal followed.

---

[2] The Notice of Appeal in this case was filed before the Judgment of Revocation of
Probation was filed.

2

(R/39)

(ii) Statement of Facts

On January 8, 1999, Denson was convicted of conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). (R/23-25) He was sentenced to 67 months in prison, to be followed by a 48 month term of supervised release. (R/24-25) During supervised release, Denson was arrested on the following dates:  February 1, 2004, for tag violation and resisting arrest; March 6, 2004, for no license tag, failure to yield to blue light/siren, reckless driving, and fleeing pursuit; April 12, 2004, for domestic violence; April 20, 2004, for grand larceny; April 27, 2004, for public drunk; and May 10, 2004, for burglary of a dwelling. (R/32-33; Ex/A-H) Denson also tested positive for cocaine twice, in addition to failing to follow his probation officer's orders by not attending drug meetings, failing to notify him of his arrests on February 1, 2004, March 6, 2004, and April 27, 2004, and submitting untruthful supervision reports. (R/33; Ex/F-H)

While Denson admitted to several Grade C violations (AB/5; Rev.Tr./5), the only facts important to this appeal stem from his arrests on April 20, 2004, and May 10, 2004. (Ex/D-E)

The April 20, 2004 violation occurred at the home of Denson's stepfather, James Luckett, and mother, Annie Lewis Luckett.  Denson stole a Panasonic 32"

3

tv, a Sylvania 19" tv, a Zenith vcr player and an Emerson dvd-vcr combination

player. (Ex/D) Annie Lewis Luckett told James Luckett that her other son had

witnessed Denson steal them. *Id.* James Luckett then called the police and filed a

police report stating these items were stolen. *Id.* The police report provided the

following values for each:  Panasonic tv, $800.00; Sylvania tv, $225.00; Zenith

vcr, $125.00; Emerson dvd-vcr $159.00. *Id.* On April 21, 2004, Denson was

arrested for grand larceny and confessed that he had taken the items to a pawn

shop and a friend's house. (Ex/D; Rev.Tr./30,45,68) Afterwards, James Luckett

dropped the charges because he felt that jail would not help Denson. (Rev.Tr./50)

Denson was released from jail the next day. *Id.*

Denson was subsequently arrested for burglary of a dwelling on May 10,

2004. (Ex/E) Denson remained in state custody until pleading guilty to a lesser

charge of simple assault on August 2, 2005. (AB/6) He was sentenced to 6 months

imprisonment, but was immediately released because he had already spent almost

15 months in jail. *Id.* During his time in state custody at the Jackson County jail,

he admitted having the opportunity to post a $50,000 bond. (AB/6,14; Rev.Tr./8)

However, Denson elected not to pay $5,000 to post bond because he felt he

"would have wasted his money if he had bonded out of state custody, because he

would have gone directly into federal custody." (AB/6,14) Instead, Denson elected

4

to remain in state custody until he pled guilty to simple assault and was released.

## SUMMARY OF THE ARGUMENT

Denson's first argument is that the district court erred by using a police report during his revocation hearing to ascertain the value of several stolen items to be greater than $500. Denson contends that he presented his mother, Annie Lewis Luckett, who provided credible in-court testimony that the stolen property was worth about $100. However, the district court found Mrs. Luckett's testimony to not be credible because she clearly favored her son, notwithstanding his numerous violations. Moreover, Mrs. Luckett only testified to the value of the stolen items as it pertained to purchasing them back from a pawn shop and Denson's friends. This testimony in no way established the fair market value of the stolen items.

Furthermore, revocation hearings are not part of the criminal prosecution, are not formal trials, and the rules of evidence are not applied. The process is flexible, allowing the consideration of letters, affidavits, and other material that would not be admissible in a criminal trial. In fulfilling its task as fact-finder, the district court is free to choose among the reasonable constructions of evidence. The district court, in its discretion, correctly opted to base it decision as to the value of the stolen property upon the police report, which was the most credible

information available.

Denson's second argument is that he should be given 9 months credit on his federal 14 month sentence for time he served in state custody. Because Denson has already served his 14 month sentence this argument is moot, as the relief requested cannot be provided by this Court. Moreover, the Supreme Court has held that even if a prisoner is found to have spent too much time in prison, that time cannot be reduced from his current term of supervised release.

Also, this argument is not ripe for adjudication. This Court has held on several occasions that before a defendant can pursue judicial review of his sentence computation, he must first exhaust all administrative remedies. The record reflects that Denson has not used any of the administrative remedies provided to him before appealing his sentence computation to this Court.

Finally, the district court was correct not to grant Denson 9 months credit on his 14 month sentence. This Court has held that if a defendant's failure to obtain release on bond was not exclusively caused by a federal detainer, he is not entitled to a credit against his federal sentence for the period of time he served in state custody. Denson readily admits that he had the opportunity to bond out of state custody with a payment of $5,000. However, he elected not to post bond. Therefore, Denson's failure to obtain release on bond was in no way exclusively

caused by a federal detainer.

## ARGUMENT

I.       IT WAS NOT AN ABUSE OF DISCRETION FOR THE DISTRICT
         COURT TO BASE ITS SENTENCE FOR DENSON'S
         SUPERVISED RELEASE VIOLATIONS, IN PART, ON HEARSAY
         EVIDENCE REGARDING THE VALUE OF THE ITEMS STOLEN.

### Standard of Review

This Court reviews "for abuse of discretion a decision to revoke supervised

release." *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995).

### Discussion

The rules of evidence do not apply to a revocation hearing. *See, e.g.*, Fed. R.

Crim. P. 32.1(b)(2); Fed. R. Evid. 1101(d)(3)("The rules (other than respect to

privileges) do not apply in . . . granting or revoking probation."); *Morrissey v.*

*Brewer*, 408 U.S. 471, 489 (1972)("the process should be flexible enough to

consider evidence including letters, affidavits, and other material that would not

be admissible in an adversary criminal trial."); *United States v. Grandlund*, 71

F.3d 507, 509 n.2 (5th Cir. 1995)("Revocation hearings are not part of the criminal

prosecution, are not formal trials, and the rules of evidence are not applied

mandatorily.").

The evidence presented against Denson at his revocation hearing consisted

of both live testimony from his probation officer, Douglas Petersen, and hearsay evidence in the form of police reports and records from each of his arrests. (Rev.Tr./12-24; Ex/A-H) In his defense, Denson cross-examined his probation officer and his mother, Annie Lewis Luckett, testified on his behalf. (Rev.Tr./24-35,40-44)

Denson argues that the value of the stolen property was worth less than $500.00 and that the district court erred in relying on the police report in determining its value. (AB/8-13) Denson makes this argument based solely on the testimony of his mother, Annie Lewis Luckett. *Id.* However, it is clear from Mrs. Luckett's testimony that she was not the individual who provided the values for the items stolen in the police report, and her favoritism towards her son, notwithstanding the crimes he committed, led the district court to find her testimony not credible. (Rev.Tr./54,65)

During her testimony, Mrs. Luckett stated she was not the person who filed charges against Denson.  Denson's stepfather, James Luckett, filed the charges against him. (Rev.Tr./54)("The Court:  Okay. Well, who made out the charges against him? A. His stepfather.") Thus, it is highly likely that James Luckett provided the values for the stolen items located on the police report.

Denson had the opportunity to have James Luckett testify as to the value of

the stolen property. *Id.* Instead, Denson now argues that "[t]he person who determined the values was not under oath, was not present for the hearing, and most important, was not identifiable." (AB/10) This is not accurate nor is it viable.

Moreover, Denson's contention that "[t]he reliability of the values stated on the Offense Form were called into doubt by credible in-person testimony of the owner of the property" is not correct. (AB/13) First, Mrs. Luckett never provided testimony as to the fair market value of the stolen property.  She only testified as to what she thought her husband paid to retrieve the stolen property from a pawn shop and a friend. (Rev.Tr./48)("The Court:  When he took the items from your house, how much money did he get for those items? A. I think at the pawn shop my husband paid maybe like 20 or $25.  And then what he took over to his friend's, the guy that he knew, he wanted $75.") Obviously, the value of stolen property purchased by a pawn shop and a friend of Denson, in no way establishes the fair market value.

Second, and most importantly, the district court disregarded Mrs. Luckett's testimony as to the value of the stolen items. (Rev.Tr./65) The court stated that "the stepfather is the one who pressed the charge, and she did not - - and I listened to her testimony where she clearly favors her son, notwithstanding his prior violations - - then the credibility on that particular point is not accepted by the

9

court." *Id.* This Court "does not pass on a district court's determination as to the credibility of the witnesses."[3] *United States v. Alaniz-Alaniz*, 38 F.3d 788, 791 (5th Cir. 1994). Therefore, Denson's assertion that the "reliability of the values stated on the Offense Form were called into doubt by credible in-person testimony" is incorrect and her testimony should be disregarded. (AB/8)

The district court, in its discretion, correctly opted to base its decision as to the value of the stolen property upon the police report, which the court determined to be the most credible information available. (Rev.Tr./64) The police report met the "preponderance of the evidence" standard required during a revocation hearing. *United States v. Hinson*, 429 F.3d 114, 119 (5th Cir. 2005). Moreover, "[i]n fulfilling his task as fact-finder, the judge is 'free to choose among reasonable constructions of the evidence.'" *Alaniz-Alaniz*, 38 F.3d at 792; *citing United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982).

Therefore, this Court should affirm the discretionary decision of the district court regarding the credibility of the police report in determining the value of the stolen property.

---

[3] "It is not this Court's function to pass on a district court's determination regarding the credibility of the witness. We may find testimony to be 'incredible as a matter of law,' if the witness testifies to facts that he 'physically could not have observed or events that could not have occurred under the laws of nature.' Short of that, we exercise great deference to a district court's credibility findings." *Id.*

10

II.     A.    DENSON'S REQUEST TO RECEIVE CREDIT ON HIS FEDERAL SENTENCE FOR TIME SERVED IN STATE CUSTODY IS MOOT BECAUSE THERE IS NO CASE OR CONTROVERSY FOR THIS COURT TO ADDRESS.

### Standard of Review

"Under Article III of the Constitution, federal courts may adjudicate only actual, on going cases or controversies." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Allen v. Wright*, 468 U.S. 737, 750-51 (1984).

### Discussion

Denson has already served his 14 month sentence and was released from federal custody on August 10, 2006. (AB/7) Denson's *only* request for this Court is to "remand this case with the instructions that the district court order the Bureau of Prisons to immediately recalculate Mr. Denson's sentence, giving him credit for time served in state custody." (AB/16-17) This request is moot, as Denson has already served his 14 month sentence.

Furthermore, even if this Court held that Denson should be given 9 months credit on his 14 month sentence, it would *not* affect his current 36 months of

11

supervised release. *United States v. Johnson*, 529 U.S. 53 (2000). In *Johnson*, the

Court held that even if an individual spends too much time in prison, a term of

supervised release is not reduced "by reason of excess time served in prison."[4] *Id.*

at 60. Therefore, awarding Denson 9 months credit on his completed 14 month

sentence provides no case or controversy for this Court to adjudicate. *See Deakins*,

484 U.S. at 199.

> B.  DENSON'S REQUEST TO RECEIVE CREDIT ON HIS FEDERAL
>     SENTENCE FOR TIME SERVED IN STATE CUSTODY IS NOT
>     RIPE BECAUSE HE FAILED TO EXHAUST ALL REQUIRED
>     ADMINISTRATIVE REMEDIES BEFORE THIS APPEAL.

Denson's request is not ripe for review because before he can seek judicial

review of his sentence, he must first exhaust all administrative remedies. *See*

*Adams v. Morrison*, 84 Fed. Appx. 419, 420 (5th Cir. 2003); *United States v. Stone*,

51 F.3d 1042, 1042 (5th Cir. 1995); *United States v. Dowling*, 962 F.2d 390, 393

(5th Cir. 1992); *United States v. Bleike*, 950 F.2d 214, 217 (5th Cir. 1991); *United*

*States v. Brown*, 753 F.2d 455, 456 (5th Cir. 1985).

This Court has held that "[p]risoners may [ ] seek administrative review of

the computations of their credit . . . and, once they have exhausted their

---

[4] The Court stated that "[t]he objectives of supervised release would be unfulfilled if
excess prison time were to offset and reduce terms of supervised release." *Id.* at 59. "Congress
intended supervised release to assist individuals in their transition to community life." *Id.*
"Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.*

12

administrative remedies, prisoners *only then* pursue judicial review of these

computations." *Stone*, 51 F.3d at 1042 (emphasis added). *See also Dowling*, 962

F.2d at 393. In *O'Connor v. Attorney General*, 470 F.2d 732, 734 (5th Cir. 1972),

the Court clarified why it requires defendants, such as Denson, to exhaust all

administrative remedies before appealing their sentences. The Court explained

that:

> These cases . . . present procedural difficulties in that
> witnesses having knowledge of the facts surrounding
> state detention and the failure to make bail are usually far
> removed from the federal courts where claims of the type
> here are asserted.  In order to facilitate the matter of
> proper credit being given to federal prisoners, the Office
> of Legal Counsel, Bureau of Prisons, Attorney General's
> Office . . . has established an internal administrative
> procedure to process such claims. The district court
> should require appellant to utilize this administrative
> remedy before proceeding to the fact questions in issue.
> *Id.*

From the record, Denson clearly did not use the administrative remedies

provided to him by the Bureau of Prisons.  Therefore, Denson is not entitled to

appeal his denial of credit for time served to this Court.

   C.   THE DISTRICT COURT WAS CORRECT TO DENY DENSON'S
        REQUEST TO RECEIVE CREDIT ON HIS FEDERAL SENTENCE
        FOR TIME HE SERVED IN STATE CUSTODY.

This Court has repeatedly held that if a defendant's failure to obtain release

on bond was not *exclusively* caused by a federal detainer, he is not entitled to a

credit against his federal sentence for the period of time he served in state custody.

*See Brown*, 753 F.2d at 456; *Shaw v. Smith*, 680 F.2d 1104, 1106 (5th Cir. 1982);

*O'Connor*, 470 F.2d at 732; *Boyd v. United States*, 448 F.2d 477, 479 (5th Cir.

1971); *Jackson v. Attorney General*, 447 F.2d 747, 748-49 (5th Cir. 1971)

(emphasis added).

> In *Jackson* this Court stated that:

> > Here the petitioner was not denied state bail
> > because of the parole violator warrant; in fact, he was not
> > denied state bail at all. Though it was offered to him and
> > though he wanted it, he simply could not make it. The
> > parole violator warrant had nothing to do with
> > petitioner's failure to be released from state custody. It is
> > true, as petitioner argues, that had he been able to make
> > bail in the state courts he would have immediately been
> > picked up under the federal warrant. It is also true that
> > once picked up under the federal parole violator warrant,
> > he would not be eligible for federal bail and hence would
> > not have been released from 'all' incarceration in any
> > event. But this is true as to all parole violators and *is
> > irrelevant for our consideration here because such
> > confinement denies petitioner none of his rights*. *Id.* at
> > 748-49 (emphasis added).

Denson readily admits that he had the opportunity to bond out of state

custody under a $50,000 commercial bond. (AB/6,14) According to Denson's

counsel, his reason for electing not to post bond with a payment of $5,000, was

that he "would have wasted his money if he had bonded out of state custody, because he would have gone directly into federal custody."[5] (AB/14) Denson's failure to obtain release was in no way exclusively caused by a federal detainer. "Where, as here, the prisoner *declines state bail*, or cannot make it, federal credit does not commence until he is actually surrendered to federal authorities." *Jackson*, 447 F.2d at 748 (emphasis added). Therefore, Denson is not entitled to credit for the 9 months he elected to serve in state custody.

## CONCLUSION

For the foregoing reasons and authorities and based upon the entire record, this district court's order should be affirmed.

Respectfully submitted,

DUNN LAMPTON
United States Attorney

By:

Gerald M. Abdalla, Jr.
Assistant United States Attorney
MSB # 101213

---

[5] Denson's probation officer further testified that "[t]he defendant told me on several occasions when he was in custody that he wanted to remain in state custody as well to fight that charge." (Rev.Tr./7) "He declared his innocence at that time, Your Honor." *Id.*

CERTIFICATE OF SERVICE

I, Gerald M. Abdalla, Jr., an Assistant United States Attorney for the

Southern District of Mississippi, do hereby certify that I have this day caused to be

mailed, first class prepaid, two true and correct copies of the above and foregoing

Appellee's Brief along with a diskette containing a copy of the brief to defendant's

counsel Omodare B. Jupiter, Federal Public Defenders Office, 200 South Lamar

Street, Suite 100-S, Jackson, Mississippi 39201.


This the _____ day of January, 2007


_____
Gerald M. Abdalla, Jr.
188 E. Capitol Street, Suite 500
Jackson, Mississippi 39201
601-973-2883